U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

JUN 2 6 2007

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

UNITED STATES OF AMERICA

versus

RUBEN WILSON

CRIMINAL NO. 06-50112-01
JUDGE TOM STAGG

## MEMORANDUM ORDER

Before the court are Ruben Wilson's ("Wilson") objections to Magistrate Judge Mark Hornsby's Report and Recommendation (Record Document 116). See Record Document 120. In the Report and Recommendation, Magistrate Judge Hornsby recommended the denial of Wilson's motions to suppress (Record Documents 91 and 101). Pursuant to 28 U.S.C. § 636(b)(1), this court is required to conduct a de novo review of the portions of the Report and Recommendation to which objections were filed. The court may then accept, reject, or modify, in whole or in part, the recommendations made by the Magistrate Judge. Following a thorough review of the motions to suppress, the Report and Recommendation, and the objections and responses thereto, the court hereby adopts the Report and

Recommendation with the following additional observations.

The tape recording of the interview of Wilson by Agents Ogdon and Hembree lasted from 10:10 a.m. to 11:45 a.m. In that hour and a half, there was an extensive and intensive level of questioning, with ready and willing responses from Wilson. In total, he mentioned sixteen names of customers, suppliers, and contacts. He identified the automobiles regularly driven by some of those individuals. When asked, he divulged the cell phone numbers of those contacts that he could immediately recall. He freely answered questions regarding the quantities, types, and costs of drugs during several specific drug transactions. He also described the funding of the drug purchases, relating that money was sent through Western Union.

While carefully listening to the tape recording, the undersigned did not detect a single instance of what could be described as "subtle psychological persuasion," claimed by Wilson's counsel to have occurred. Record Document 120 at 4-5. That there may have occurred some instances of alleged "persuasion" prior to the actual interview-- the number of officers present, the fact that two officers accompanied Wilson into his house to get his shoes and his cell phone, and showing him an unsigned warrant-- does not overcome Wilson's calm, matter-of-fact answers to the

roughly 353 questions later asked.

It is also a fact of some importance that on a prior occasion when Wilson wanted to speak with the agents, he had no hesitancy to call Agent Haynes and arrange a meeting (April 6, 2005) in Canton, Texas. This voluntary meeting with federal drug agents, initiated by Wilson, tends to drastically diminish the possibility that this second meeting was fraught with "subtle psychological persuasion." Wilson is not a young person unfamiliar with the giving of statements to law enforcement personnel. At six feet, six inches tall and about 330 pounds, if he did not want to talk to the agents, he could have enforced that determination. Moreover, his signed "Waiver of Rights" includes a critical sentence that cannot be ignored: "I understand and know what I am doing."

In short, the facts belie his assertion that he was "seized" in terms of the Fourth Amendment. When police conduct indicates that one is not free "to disregard the police and go about his business," a seizure occurs. California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 1552 (1991); see United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980) ("As long as the person to whom questions are put remains free to disregard the questions and walk

3

away, there has been no intrusion upon that person's liberty or privacy . . . ."). The court is cognizant of the rule that "a confession obtained by exploitation of an illegal arrest may not be used against a criminal defendant." <u>Kaupp v. Texas</u>, 538 U.S. 626, 628, 123 S.Ct. 1843, 1844 (2003) (internal marks omitted).

Wilson continually argues that his willingness to answer questions was simply "a mere submission to a claim of lawful authority." Record Document 120 at 9. However, the totality of the circumstances-- including Wilson's familiarity with law enforcement, his prior voluntary meetings with drug agents, the public place in which the meeting occurred, the agents' alleged willingness to secure cigarettes for Wilson upon his request,[1] and his calm demeanor-- contravene his contention that he was not free to refuse the encounter. The agents requested, but did not demand, an interview with Wilson. Further, though the agents were armed, they never brandished their weapons or exhibited them in any manner.

Viewing the totality of the circumstances, the court concludes that a

---

[1] Much is made of an alleged escort to the bathroom at the park and the need for someone to retrieve cigarettes for Wilson. If this occurred, the tape does not reveal it. Apparently, the only time the tape was turned off was when it was "turned over" at 11:35.

4

reasonable person in Wilson's situation would have believed the interview was a matter of choice-- a choice about which he could change his mind. It appears a change of mind did, in fact, occur; unfortunately for Wilson, it occurred too late. Wilson was not "arrested" simply because federal agents approached him at his home and requested a meeting to discuss issues of a criminal nature. Because the undersigned does not find that Wilson was arrested, an analysis of the voluntariness of Wilson's statements is unnecessary. Nonetheless, the Magistrate Judge addressed such matters, and the court ultimately agrees with the conclusion. In sum, the "totality of the circumstances" strongly support the ruling of Magistrate Judge Hornsby. Accordingly;

**IT IS ORDERED** that the Report and Recommendation (Record Document 116) be adopted and that Wilson's motions to suppress (Record Documents 91 and 101) be and are hereby **DENIED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 26th day of June, 2007.

JUDGE TOM STAGG