# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 06-50112-01 |
| versus | JUDGE TOM STAGG |
| RUBEN WILSON | |

## MEMORANDUM RULING

Before the court is Ruben Wilson's ("Wilson") motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. See Record Document 201. Based on the following, Wilson's motion is **DENIED**.

## I. BACKGROUND

### A. Factual Background.

On February 14, 2006, Wilson was visited by five Drug Enforcement Administration ("DEA") agents at his home in Arlington, Texas. Two of the agents were Jimmy Ogden ("Ogden") and Hank Haynes ("Haynes"). Upon arrival, officer Ogden told Wilson that his name arose in an investigation concerning drug dealing in Ringgold, Louisiana and that if Wilson wanted to cooperate, then "now's the time." Haynes, who Wilson had known since the early 1990s, told Wilson "it's serious" and "the best thing you can do is cooperate." Wilson agreed to talk with the agents in private. He was escorted inside to retrieve his shoes and cell phone and then was

transported in Haynes's sport utility vehicle ("SUV") to a public park near his home. Other agents were staked around the park for security reasons, but Wilson was unaware of their existence.

Once at the park, DEA Agent Mike Hembree joined Wilson and the other two agents in Haynes's SUV. Agents showed Wilson an unsigned affidavit and arrest warrant to inform him of their knowledge of his alleged drug dealing activities and to get him to cooperate. Wilson was read his <u>Miranda</u> rights, and he signed a DEA form waiving those rights before agreeing to a taped interview. At no point was Wilson handcuffed, told he was under arrest or that he was not free to leave, nor were weapons ever drawn.

In a ruling on a motion to suppress filed by Wilson, the court found the tone of the recorded interview to be "friendly and cooperative" and that there was "no indication that Defendant was under any duress." Record Document 116 at 5. The interview lasted from approximately 10:10 a.m. to 11:45 a.m. During that time, Wilson mentioned, <u>inter alia</u>, names of customers, suppliers, contacts, and drug transactions. After the interview, Wilson was returned to his home.

The agents believed that Wilson would cooperate in the future and planned to obtain permission from the court and probation for his cooperation. Instead, Wilson contacted Haynes and told him that he had a lawyer and did not desire to cooperate.

2

**B.     Procedural History.**

On June 28, 2006, Wilson, along with four other individuals, was indicted for conspiracy to distribute fifty grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. See Record Document 1. As mentioned, in October of 2006, he filed a motion to suppress the recorded statement he made to agents on February 14, 2006. See Record Document 91. On March 8, 2007, the magistrate judge issued a Report and Recommendation, recommending that Wilson's motion to suppress be denied. The court adopted the magistrate judge's recommendation and the motion to suppress was denied. See Record Document 136.

On October 3, 2007, Wilson pled guilty to count one of the indictment, reserving the right to appeal the denial of the motion to suppress. See Record Document 153. Nearly a month later, Wilson filed a motion to withdraw his plea which was denied. See Record Documents 157 and 158. Thereafter, he filed a motion for appointment of new counsel which was also denied. See Record Documents 159 and 160. Wilson was sentenced to 120 months of imprisonment and appealed the ruling on the motion to suppress which the Fifth Circuit affirmed. See United States v. Wilson, 306 F. App'x 871(5th Cir. 2009). He also filed a writ of certiorari but was denied. See Wilson v. U.S., 129 S.Ct. 2816 (2009). On Sept. 29, 2009, Wilson filed the instant section 2255 motion. See Record Document 201.

## II. LAW AND ANALYSIS

Wilson brings several claims in his section 2255 motion. He claims that: the government breached the plea agreement; the DEA agents and prosecution engaged in misconduct; and his plea agreement was not voluntary. He also brings claims of ineffective assistance of counsel and "actual innocence." All of Wilson's claims are addressed separately below.

**A.     Breach Of Plea Agreement.**

To determine whether the government has breached a plea agreement, "[t]he proper inquiry is whether the government's conduct comports with the parties' reasonable understanding of the agreement." United States v. Price, 95 F.3d 364, 367 (5th Cir. 1996) (citing United States v. Witte, 25 F.3d 250, 262 (5th Cir. 1994), aff'd, 515 U.S. 389, 115 S.Ct. 2199 (1995)). "The defendant bears the burden of demonstrating the underlying facts that establish the breach by a preponderance of the evidence." Id.

Wilson claims the government breached the plea agreement by not giving him the opportunity to provide substantial assistance for the purpose of ultimately obtaining a section 5K1.1 downward departure. "Section 5K1.1 gives the Government the power, not a duty, to file the motion when the defendant has provided substantial assistance." Price, 95 F.3d at 368. It does not "require the government to move for a downward departure if the defendant provides substantial

4

assistance, but rather grants the government discretionary power to make such a motion." Id. (citing United States v. Garcia-Bonilla, 11 F.3d 45, 46 (5th Cir. 1993)). The government's discretion is limited only by constitutional constraints. See Price, 95 F.3d at 368.

The government can, however, bargain away its discretion under the terms of the plea agreement. Whether the government has bargained away its discretion depends on the specific language of the plea agreement at issue. See id. The Fifth Circuit has held that when the plea agreement states that the government "will file" a motion or something to that effect in exchange for the defendant's substantial assistance, then the government has bargained away its discretion. See United States v. Watson, 988 F.2d 544, 552 (5th Cir. 1993); see also United States v. Laday, 56 F.3d 24, 25-26 (5th Cir. 1995). When the plea agreement expressly states that the government retains "sole discretion" or uses similar language, then the government's refusal to file a section 5K1.1 motion is subject to review only for unconstitutional motive. See Price, 95 F.3d at 368; see also Garcia-Bonilla, 11 F.3d at 47.

The government asserts that the plea agreement contains no language obligating it to interview Wilson. See Record Document 207 at 13. It further states that, according to Price, there was no obligation to give Wilson the opportunity to provide "substantial assistance" since the agreement expressly stated that the government retained the sole discretion to file a section 5K1.1 motion. See id.

5

Wilson contends, that according to Laday, the plea agreement was breached. He distinguishes Price by stating that the defendant in that case was already debriefed once by the government, and the defendant claimed he should have been interviewed further. However, in Laday, the defendant was never interviewed. Wilson concludes that the government breached the plea agreement because he, like Laday, was never interviewed.[1]

Wilson's interpretation of the two cases is inaccurate. The distinguishing factor in these two cases is whether the government retained its sole discretion to move for a downward departure under section 5K1.1. The court in Price found that the government in Laday breached the agreement because it unequivocally obligated itself to move for a downward departure in order to induce the defendant to cooperate. See Price 95 F.3d at 369. In contrast, the plea agreement in Price expressly retained the government's "sole discretion" to move for a downward departure. See id.

The facts of the instant case are controlled by Price. Wilson's plea agreement states "[t]he United States may, but shall **not** be required to, make a motion requesting the Court to depart from the sentencing range called for by the guidelines in the event [he] provides 'substantial assistance.'" Record Document 153 at 5-6.

---

[1] Wilson agrees that the government retained its full discretion over filing the section 5K1.1 motion, but since it did not expressly reserve the right not to interview him, the government was obligated to do so.

6

The agreement further states "**no promise** has been made that a motion will be made for departure even if Defendant complies with the terms of this agreement in all respects, but has been unable to provide 'substantial assistance.'" Id. at 6. It is clear from the language of the plea agreement that the government retained the sole discretion to move for a downward departure regardless of whether or not Wilson provided "substantial assistance". There is nothing in the plea agreement to cause Wilson reasonably to believe that the government obligated itself to interview him. For these reasons, the government did not breach the plea agreement when it decided not to interview Wilson.

Even if Wilson could succeed on the merits, his claim is procedurally barred. A defendant may not raise an issue for the first time collaterally without showing both (1) "cause" for his double procedural default, and (2) "actual prejudice" resulting from the errors. See United States v. Frady, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 1594 (1982); see also United States v. Shaid, 937 F.2d 228, 232 (5th Cir. 1991). This standard presents a "significantly higher hurdle" than the "plain error" standard applied on direct appeal. This standard must be applied even when fundamental constitutional errors are raised. See id.

Regardless of whether Wilson is able to demonstrate "cause" for his procedural fault, he cannot demonstrate that he suffered an "actual prejudice." A mere possibility of prejudice will not satisfy the actual prejudice prong of the Frady

standard. See Shaid, 937 F.2d at 236. A defendant must show that the errors he alleges worked to his actual and substantial disadvantage. See id. Wilson shows that the alleged breach only created a possibility of prejudice. Even if the government did interview Wilson and he was found to have provided "substantial assistance," the government was not obligated to move for a downward departure. Therefore, he could have received the same sentence regardless of whether or not he was interviewed. Because Wilson cannot show that he suffered actual prejudice, his claim for breach of the plea agreement is barred.

**B.    Prosecutorial Misconduct.**

Wilson claims that the prosecution and DEA agents have falsified police reports, destroyed and altered evidence, committed perjury, and violated his rights. A defendant's right to due process is violated when false testimony is knowingly offered to obtain a conviction. See Tucker v. Johnson, 242 F.3d 617, 626 (5th Cir. 2001). Relief is warranted if "(1) the statements in question are shown to be actually false; (2) the prosecution knew that they were false; and (3) the statements were material." Id.

Specifically, Wilson alleges that the police report regarding the occurrences on February 14, 2006, and the agents' testimonies at the February 22, 2007, suppression hearing are false because they are inconsistent. To substantiate these claims, Wilson argues that the police report only mentions the names of four agents and the court

testimony indicates that ten to twelve agents were involved. He also attempts to demonstrate the falsity of the police report by citing to the fact that the unsigned arrest warrant and affidavit are not mentioned in the report. The agents' testimonies and the police report, however, are not inconsistent. The agents' statements at the suppression hearing merely augmented the earlier police report. For this reason, Wilson has not demonstrated that the police report or testimonies are false to succeed in his claim, nor has he demonstrated their materiality.[2]

Wilson further claims that forty-six minutes of the ninety minute long audio recording were withheld from the district court by the agents; however, he offers little evidence to substantiate this claim. During the suppression hearing, the court noted that the recorded interview ended at approximately 11:45 a.m. which was about an hour and half after it began. See Record Document 116 at 5. In light of the lack of evidence supporting Wilson's claim, this court rejects this claim.

C.  **Involuntary Plea.**

Wilson claims that he entered into the plea agreement involuntarily. Specifically, he asserts that he received erroneous advice from his defense counsel regarding the plea agreement. Wilson raises this issue for the first time in his section 2255 motion. "It is well settled that a voluntary and intelligent plea of guilty made

---

[2] Wilson alleged much of the same at the suppression hearing, and the magistrate judge found his testimony not credible.

by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 1610 (1998) (quoting Mabry v. Johnson, 467 U.S. 508, 104 S.Ct. 2543, 2546-2547 (1984)). "And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley, 523 U.S. at 621, 118 S.Ct. at 1610. If the defendant has failed to raise it on direct review, "the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice.'" Id. at 622, 118 S.Ct. at 1611. For the same reasons stated previously, the court does not find that Wilson has established the requisite "cause" and "actual prejudice". Regardless, Wilson's involuntary plea claim lacks merit.

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" Id. at 618, 118 S.Ct. at 1609. Wilson's testimony at his guilty plea hearing and the documents in which he signed both indicate that he entered into the agreement voluntarily and intelligently. During his guilty plea hearing, the following colloquy took place:

> THE COURT: I ordinarily ask a question at this stage, did anybody lean on you or use undue persuasion to cause you to come here; but because of your size, mental equipment, and otherwise, I don't think that would be appropriately done by anybody. But did anybody mess with you about pleading guilty?

> THE DEFENDANT: No, sir.
>
> THE COURT: Is this a free and voluntary act on your part, done with advice of your lawyer?
>
> THE DEFENDANT: Yes, sir.

Guilty Plea Transcript at 8. "Such testimony in open court carries a strong presumption of verity." <u>United States v. Abreo</u>, 30 F.3d 29, 31 (5th Cir. 1994) (citing <u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977)). Furthermore, the affidavit of understanding signed by Wilson provides:

> I further state that my plea in this matter is free and voluntary and that it has been made without any threats or inducements whatsoever (except the plea agreement) from anyone associated with the State or United States Government or my attorney and that the only reason I am pleading guilty is that I am in fact guilty as charged.

Record Document 153. This document signed by Wilson is "accorded great evidentiary weight." <u>Abreo</u>, 30 F.3d at 32.

Wilson argues that he was misled by counsel with respect to the benefits of pleading guilty and that there was no benefit obtained from pleading guilty as opposed to taking the case to trial. He claims he would have been subject to the same exposure had he lost at trial. These statements are incorrect considering the plea agreement contained the possibilities of a section 5K1.1 downward departure and a departure for acceptance of responsibility. See <u>id.</u> at 4-6. For the reasons stated, the

court finds that Wilson's claim for involuntary plea is procedurally barred and, nevertheless, has no merit.

### D.  Ineffective Assistance Of Counsel.

Wilson also claims that Peter Black ("Black") and Betty Marak ("Marak") provided ineffective assistance of counsel. Specifically, he asserts that defense counsel failed to investigate as directed, failed to bring the government's plea agreement breach to the attention of the court[3], and that Marak was incorrect in stating his possible minimal base offense level for sentencing which influenced him to enter the plea agreement. Ineffective assistance of counsel claims may generally be heard under a section 2255 motion. See United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996). However, to prevail on a claim of ineffective assistance of counsel, Wilson must prove that (1) his counsel's actions fell below an objective standard of reasonableness and (2) his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). The first prong of the Strickland analysis requires a showing by Wilson that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. The Fifth Circuit has described this

---

[3] As stated above, the government did not breach the plea agreement by not interviewing Wilson. Therefore, defense counsel were not derelict by not bringing this to the court's attention.

standard as requiring that counsel "research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000) (quotation and citation omitted). In evaluating counsel's performance, the court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. Wilson may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066.

Under the second prong of the Strickland test, Wilson must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. To satisfy the prejudicial prong of the Strickland test, Wilson must establish that he would have received less time in prison. See United States v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004). If Wilson fails to establish either prong of the Strickland test, then his claim of ineffective assistance of counsel must fail.

1.   **Failure To Investigate.**

Wilson alleges his defense counsel, Marak, was ineffective in that she failed to adequately investigate exculpatory evidence and testimony. He specifically complains that she failed, as directed, to interview a neighbor that witnessed what happened at his driveway, his father-in-law, Kenneth Mays, and the co-defendants. He also instructed Marak to investigate the length of the audio confession, subpoena the phone records of Agent Hembree from February 14, 2006, and subpoena the agents' expense reports on the same date. His purpose was to show the confession was involuntary and to contradict the testimony of the agents. Wilson claims Marak rejected his instruction stating that the court would not allow the jury to hear the circumstances surrounding the audio confession. He claims that if Marak had conducted the investigation as he directed, he would have taken the case to trial or accepted the government's "5-40"[4] plea bargain proposal.

In <u>Strickland</u>, 466 U.S. at 691, 104 S.Ct. at 2066, the Supreme Court stated:

---

[4] The government offered Wilson two plea bargains. In the first offer, the "5-40" offer, Wilson would plea guilty to count one without reserving his right to appeal the ruling on his motion to suppress. His mandatory minimum and maximum sentence exposure would be not less than five years and no more than forty. In the second proposal, the "10-life" offer, Wilson would preserve his right to appeal the motion to suppress, but would be exposed to a minimum of ten years imprisonment and no more than life imprisonment. <u>See</u> Record Document 201, Letter from United States Attorney to Betty Marak.

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

"So long as counsel made an 'adequate investigation,' any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." Smith v. Cockrell, 311 F.3d 661, 668 (5th Cir. 2002) (citation omitted), overruled on other grounds by Tennard v. Dretke, 542 U.S. 274, 283-84, 124 S.Ct. 2562, 2569-2570 (2004). The Fifth Circuit has held that the first prong of Strickland does not require the "interview of every claimed eyewitness, alibi witness, and/or assertedly exculpating criminal co-participant." Bryant v. Scott, 28 F.3d 1411, 1419 n.13 (5th Cir. 1994).

The court finds that counsel's decision to not follow through with these investigations was reasonable. The facts that Wilson intended to obtain related to the motion to suppress issue which had already been resolved by the court. See Record Documents 116 and 136. It is completely reasonable that counsel thought these investigations would be fruitless and a waste of time. Marak did not provide ineffective assistance as counsel by denying to investigate as directed by Wilson.

2. **Erroneous Advice Regarding Sentencing.**

Wilson claims that if Marak had not exaggerated what his base offense level would be if he went to trial, he would have instead taken his case to trial or accepted the "5-40" plea bargain. According to Wilson, Marak told him that his base offense level would be at least thirty-two with a criminal history category of IV, which provides a sentencing range of 168 to 210 months. Therefore, it was more favorable to accept the "10 to life" plea agreement which preserved his right to appeal the motion to suppress ruling. He also alleges that she stated he was likely to receive an additional two to four points for a "leadership role" in the offense. The presentence report had a base offense level of thirty with a criminal history category of III which provides a sentencing range of 87 to 108 months. Wilson was sentenced to ten years in prison.

Counsel's good faith but erroneous prediction of a sentence does not render the guilty plea involuntary. See Johnson v. Massey, 516 F.2d 1001, 1002 (5th Cir. 1975). The fact that Marak's predication of his base offense level was incorrect is not sufficient to render Wilson's guilty plea involuntary or unknowing. None of Wilson's allegations indicate that Marak's prediction was in bad faith nor do they indicate that any promises were made to Wilson regarding his sentence.[5] To the contrary, the

---

[5] Betty Marak has been a Public Defender for 16 years and has appeared in court as counsel for over 1000 defendants. Claims of inadequacy directed at her representa-

colloquy at his guilty plea hearing indicates that Wilson knew that no promise was made to him with respect to his sentence and it was his attorney's "educated guess." The transcript of his guilty plea hearing provides:

> THE COURT: Has Mrs. Marak given you her educated guess as to where she thinks the weight of the methamphetamine and the other matters and your criminal history together, has she given you an educated guess where she thinks you will fall on that chart?
>
> THE DEFENDANT: Yes.
>
> THE COURT: If she hadn't, I would be terribly surprised. All the good attorneys that come here have had enough practice with the guidelines that they can give a client their educated guess of where they think it will reside. But nobody, sir, made a promise to you about where you landed on that chart, did they?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Not Mr. Gillespie?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: And not Mrs. Marak?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All you have is her suggestion to you as to what she thinks the score is?

---

tion are relatively rare.

THE DEFENDANT: Yes, sir.

See Guilty Plea Tr. at 12. Therefore, Wilson's ineffective assistance of counsel claim based on Marak's prediction of his sentence must fail.[6]

### E. Actual Innocence.

Wilson also argues that he is actually innocent. To establish his actual innocence, Wilson must demonstrate that, in light of all the evidence, it is more probable than not that no reasonable juror would have convicted him. See Bousley, 523 U.S. at 623, 118 S.Ct. at 1611. "Actual innocence" means factual innocence and not mere legal insufficiency. See id.

Wilson's argument for actual innocence is predominately a rehash of his other arguments already addressed by the court. He argues that there was only one damaging piece of evidence, the audio tape, there was no evidence to support this was a voluntary confession, and the officers committed perjury. Wilson then concludes that because of this, no reasonable juror would have convicted him. The record does not substantiate any of these allegations, and most of these arguments have already been rejected by the court. This judge listened carefully to the audio tape and

---

[6] Wilson also claims ineffective assistance of counsel because: his attorneys did not spend enough time with him; they should have challenged the indictment; and they should have informed him that the sentencing guidelines were no longer mandatory. The court has considered and rejected these arguments.

concluded that the defendant's guilt was clearly evident. Therefore, Wilson's actual innocence claim must fail.

### III. CONCLUSION

Wilson's claims of breach of the plea agreement, prosecutorial misconduct, involuntary plea, ineffective assistance of counsel, and actual innocence are all without merit. Therefore, his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Record Document 201) is **DENIED.**

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 23rd day of November, 2011.

JUDGE TOM STAGG